## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| MICHAEL MOHAMMED LEE, | : | CIVIL ACTION |
|  | : |  |
| Plaintiff, | : |  |
|  | : |  |
| v. | : | No.  13-0486 |
|  | : |  |
| MAJOR ABELLOS, et al., | : |  |
|  | : |  |
| Defendants. | : |  |
|  | : |  |

### MEMORANDUM

**ROBERT F. KELLY, Sr. J.**                                   **DECEMBER 19, 2014**

        Presently before the Court is Defendants, Corizon Health, Inc. ("Corizon"), and Corizon

Physician Assistant, Helen Sarskaya's ("Sarskaya") (collectively, the "Corizon Defendants"),

Motion for Summary Judgment against Plaintiff, Michael Mohammed Lee ("Plaintiff"), and

Plaintiff's Response.  For the reasons which follow, this Motion is granted.

**I.      BACKGROUND**[1]

        **A.      The Parties**

        Plaintiff is an adult male resident of the Commonwealth of Pennsylvania.  Sec. Am.

Compl. ¶ 7.  At all times relevant to this litigation, Plaintiff was imprisoned at the Curran-

Fromhold Correctional Facility ("CFCF") in Philadelphia, Pennsylvania.  Id.  Corizon is a

Delaware corporation and, at all relevant times, held a contract to provide all medical services to

---

        [1]For a complete factual and procedural background of this action, see this Court's previous
Memorandum Opinion filed on December 10, 2014.  (See Doc. No. 79.)

inmates in the Philadelphia Prison System ("PPS"),[2] and was under the direct control and

supervision of the City of Philadelphia (the "City").[3]  Id. ¶ 20.  Sarskaya is a physician's assistant

employed by Corizon.[4]  Id. ¶ 29.

      **B.**     **Plaintiff's Claims[5]**

      Plaintiff asserts the following allegations which occurred during his two periods of

incarceration at CFCF.[6]  On September 8, 2012, while incarcerated at CFCF, he was attacked by

several correctional officers after returning from a counseling session with a health professional.

Id. ¶ 38.  This attack caused Plaintiff injuries to various parts of his body.  Id.  On December 22,

2012, Plaintiff injured his knee getting off the top bunk at CFCF.  Id. ¶ 44.  On this same date, he

---

     [2]All claims against the PPS were dismissed on August 23, 2013, (See Doc. No. 30), because "[al]l suits growing out of [PPS'] transactions . . . shall be in the name of the City of Philadelphia."  53 P.S. § 16257; see also Baylor v. Phila. Prison System, No. 10-1468, 2010 WL 3191803, at *1 (E.D. Pa. Aug. 11, 2010).

     [3]Plaintiff also named as Defendants the following: (1) the City; (2) PPS Commissioner Louis Giorla ("Giorla"), (3) PPS Deputy Commissioner Clyde Gainey ("Gainey"), (4) CFCF Warden John Delaney ("Delaney"), (5) CFCF Deputy Warden Frederick Abellos ("Abellos"), (6) CFCF Deputy Warden Gerald May ("May"), (7) CFCF Correctional Lieutenant Elizabeth Henry ("Henry"), (8) CFCF Correctional Sergeant Brown ("Brown"), (9) Chief Medical Officer of the PPS, Dr. Bruce Herdman ("Defendant Dr. Herdman"), (10) "Whittaker," a PPS major at CFCF; (11) "Moore," a PPS Major at CFCF; (12) Freddie Washington, a CFCF correctional officer (collectively, the Municipal Defendants); (13) Richard Hallworth, the CEO of Corizon; (14) Rebecca Pinney, Chief Nursing Officer at Corizon; (15) Geoff Perselay, a Senior Vice President at Corizon; (16) Mary Silva, a Vice President at Corizon; (17) Dr. Eke Kalu, a Regional Medical Director at Corizon; (18) Latasha Deer, a Health Service Administrator at Corizon; (19) Brandon DeJulius, a Regional Medical Director at Corizon; and (20) Dr. Bruce Blatt (Defendant Dr. Blatt"), a medical doctor, employed by Corizon.  Sec. Am. Compl. ¶¶ 15-27.

     [4]Defendants, Mary Silva, Latasha Deer, Brandon DeJulius, Melvin Whittaker, Marcella Moore Freddie Washington, Richard Hallworth, and Rebecca Pinney were dismissed from this action by stipulation of the parties.  (See Doc. Nos. 40, 52, 54.)

     [5]We state only those factual allegations and claims relevant to the Corizon Defendants.

     [6]Plaintiff was incarcerated at CFCF from September 8, 2012, to September 18, 2012, and from November 22, 2012, to January 10, 2014.

made a "Sick Call Request" stating that his knee was swollen and he was in pain.  Id. ¶ 45.  He

also made Sick Call Requests on December 23, 25 and 30, 2012, and was not given any medical

treatment from December 22, 2012, through January 9, 2013.  Id. ¶¶ 46-50.  During that time,

Plaintiff was compelled to continue sleeping on the top bunk because Corizon's medical staff

would not give him a bottom bunk accommodation.  Id. ¶ 51.

On January 9, 2013, Plaintiff again injured his knee getting off the top bunk.  Id. ¶ 52.

On January 10, 2013, Plaintiff had an x-ray taken of his left knee which revealed a knee injury.

Id. ¶ 53.  Plaintiff was seen by Defendant Dr. Blatt who did not provide any medical treatment

for his alleged serious orthopedic injury.  Id. ¶ 55.  Between January 10, 2013 and February 20,

2013, Plaintiff injured his left knee several more times getting off the top bunk, and the Corizon

Defendants did not allow him a bottom bunk accommodation.  Id. ¶¶ 60-61.  On February 20,

2013, Plaintiff made a Sick Call Request stating that he hurt his knee again getting off the top

bunk and was in "bad pain."  Id. ¶ 62.  On April 30, 2013, an MRI of Plaintiff's left knee was

conducted and showed a tear in his meniscus.  Id. ¶ 63.  The Corizon Defendants intentionally

delayed his request to have an orthopedic consultation because of this instant lawsuit against

them.  Id. ¶ 67.  In addition, Sarskaya failed to provide any medical treatment for his injury.  Id. ¶

68.

In the Second Amended Complaint, Plaintiff alleges the following against the Corizon

Defendants:

> (1) "Violations of constitutional amendments, civil rights and other federal
> laws" against the Corizon Defendants (Count 2).  Under this Count,
> Plaintiff asserts that the Corizon Defendants, under color of state law, and
> pursuant to an unconstitutional custom, policy, and practice:  (a) acted
> with intentional and willful deliberate indifference to his constitutional

3

rights; (b) failed to provide prompt and adequate healthcare for his serious medical needs; (c) retaliated against him for his religious beliefs in violation of the First and Fourteenth Amendments; (d) failed to supervise its executives and employees at PPS for many years, and failed to take corrective action of known misconduct; (e) Defendant Dr. Blatt acted with deliberate indifference to his serious medical needs; and (f) Defendant Sarskaya acted with deliberate indifference to his serious medical needs;

(2) State law claim [of] corporate negligence against the Corizon Defendants (Count 4).  Plaintiff alleges that "Corizon and its employees at PPS, such as Defendants Silva, Kalu, Blatt, and Helen," in negligently and recklessly examining and treating him, violated their duty of care to him; and

(3)  State law claim of intentional infliction of emotional distress against all Defendants (Count 7).

Sec. Am. Compl. ¶¶ 97-98, 104-106, 118-119.

### C.    Procedural History

On January 30, 2013, Plaintiff filed a pro se civil rights action against Defendants Abellos, Delaney, and May.  (See Doc. No. 3.)  After obtaining the representation of Geoffrey Seay, Esquire, Plaintiff filed a Motion for Leave to File an Amended Complaint, which this Court granted on June 12, 2013.  (See Doc. Nos. 13, 16.)  The subsequent Amended Complaint added eighteen Defendants, as named above, and spanned forty-nine pages with approximately two hundred and sixty-seven paragraphs.  See Am. Compl.  Both the Municipal and Corizon Defendants filed Motions to Dismiss and argued that the Amended Complaint failed to comport with the requirements of Federal Rule of Procedure 8.[7]  (See Doc. Nos. 19, 21.)  We agreed and granted the Motions, but granted Plaintiff leave to file another Amended Complaint.  (See Doc. No. 29.)  Plaintiff filed a Second Amended Complaint on September 5, 2013.  (See Doc. No. 31.)

---

[7]The Federal Rules require that a complaint set forth a "short and plain statement of the claim" whereby "each allegation must be simple, concise and direct."  Fed. R. Civ. P. 8(a)(2) and (d)(1).

The Corizon Defendants filed the instant Motion for Summary Judgment on August 30, 2014.[8]

(Doc. No. 57.)  Plaintiff filed a Response on October 17, 2014.  (Doc. No. 77.)

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) states that summary judgment is proper "if there is

no genuine issue as to any material fact and the moving party is entitled to judgment as a matter

of law."  See Hines v. Consol. Rail Corp., 926 F.2d 262, 267 (3d Cir. 1991).  The Court asks

"whether the evidence presents a sufficient disagreement to require submission to the jury or

whether . . . one party must prevail as a matter of law."  Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 251-52 (1986).  The moving party has the initial burden of informing the court of the

basis for the motion and identifying those portions of the record that demonstrate the absence of

a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "A fact is

material if it could affect the outcome of the suit after applying the substantive law.  Further, a

dispute over a material fact must be 'genuine,' i.e., the evidence must be such 'that a reasonable

jury could return a verdict in favor of the non-moving party.'"  Compton v. Nat'l League of

Prof'l Baseball Clubs, 995 F. Supp. 554, 561 n.14 (E.D. Pa. 1998).

Summary judgment must be granted "against a party who fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322.  Once the moving party

has produced evidence in support of summary judgment, the non-moving party must go beyond

---

[8]The Municipal Defendants filed a Motion for Summary Judgment on August 28, 2014.  (Doc. No. 55.)  This Motion was granted in its entirety on December 10, 2014.  (See Doc. No. 79.) Consequently, Defendants, the City, Giorla, Gainey, Delaney, Abellos, May, Henry, Brown, and Dr. Herdman, were dismissed from this action.  (See Id.)

the allegations set forth in its pleadings and counter with evidence that presents "specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e); see Big Apple BMW, Inc. v. BMW of N. Am. Inc., 974 F.2d 1358, 1362-63 (3d Cir. 1992).  "More than a mere scintilla of evidence in its favor" must be presented by the non-moving party in order to overcome a summary judgment motion.  Tziatzios v. United States, 164 F.R.D. 410, 411-12 (E.D. Pa. 1996).  If the court determines that there are no genuine issues of material fact, then summary judgment will be granted.  Celotex, 477 U.S. at 322.

## III.    DISCUSSION

### A.    Eighth Amendment Claim

Plaintiff claims that the Corizon Defendants were "deliberately indifferent" to his serious medical needs in violation of his Eighth Amendment rights.  Sec. Am. Compl. ¶ 96.  Plaintiff asserts that the Corizon Defendants "intentionally failed to provide [him] with the required medical treatment for his serious medical needs for more than 365 days."  (Pl.'s Resp. at 9.) Plaintiff further alleges that the Corizon Defendants delayed his necessary medical treatment for non-medical reasons.  (Id.)

The Eighth Amendment's proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care.  Estelle v. Gamble, 429 U.S. 97 (1976).  The Estelle Court determined that, in order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.  Id. at 106.  Therefore, to succeed under these principles, Plaintiff must demonstrate: (1) that the Corizon Defendants were deliberately indifferent to his medical needs, and (2) that those needs were serious.  Id.

6

It is well-settled that claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute "deliberate indifference." Id.  As the Estelle Court noted: "[i]n the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.'" Id. at 105; see also Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999); Durmer v. O'Carroll, 991 F.2d 64, 67 (3d Cir. 1993).  "Deliberate indifference," therefore, requires "obduracy and wantonness," Whitley v. Albers, 475 U.S. 312, 319 (1986), which has been likened to conduct that includes recklessness or a conscious disregard of a serious risk.  Farmer v. Brennan, 511 U.S. 825, 842 (1994).

The Court of Appeals for the Third Circuit ("Third Circuit") has found "deliberate indifference" in a variety of circumstances, including where a prison official: (1) knows of a prisoner's need for medical treatment, but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment.  Durmer, 991 F.2d at 68.

We note, at this time, that in our prior Memorandum Opinion, we addressed the issue of deliberate indifference to Plaintiff's serious medical needs against the Municipal Defendants. See Lee v. Abellos, No. 13-0486, 2014 WL 6987414, at *4-8 (E.D. Pa. Dec. 10, 2014).  That discussion is applicable to Plaintiff's allegations against the Corizon Defendants here because we considered the care given to Plaintiff by Corizon employees for his alleged serious medical problems, and, in particular, his left knee problems.  (Id.)  Consequently, we incorporate, almost verbatim, our discussion from that Memorandum Opinion below with regard to the issue of deliberate indifference.

7

1. **Corizon**

a. **Serious Medical Need**

We initially address the issue of whether Plaintiff's left knee injury constituted a serious medical need.  A "serious medical need" is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."  Johnson v. Stempler, 373 F. App'x 151, 153 n.1 (3d Cir. 2010) (citing Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987)). We first find that Plaintiff's left knee condition did not constitute a serious medical need during the period from December 22, 2012, when he first reported that he hurt his knee, until early April 2013, when he was referred for an MRI.

The record indicates that Plaintiff submitted a Sick Call Request to CFCF officials on December 22, 2012, stating that he hurt his knee getting out of the top bunk, and that his knee was swollen and that he was in pain.  (Municipal Defs.' Mot. Summ. J., Ex. H.)  He submitted another Sick Call Request on December 23, 2012, stating that he had injured his knee.  (Id., Ex. I.)  Plaintiff was scheduled to see medical personnel at CFCF on December 26, 2012.[9]  (Id.) However, the appointment was cancelled and rescheduled because Plaintiff had a court appearance on that day.[10]  (Id., Ex. O.)  Plaintiff was seen by prison health care personnel on January 9, 2013.  (Id., Ex. P.)

_____

[9] Plaintiff acknowledged that he was seen at the prison asthma clinic on December 24, 2012, and was given medication for his throat "closing up."  (Municipal Defs.' Mot. Summ. J., Ex. B, Lee Dep. ("Lee Dep."), at 74-75.)  There is no indication in the record that Plaintiff reported a knee injury at this time.  (Id.)

[10] Plaintiff also submitted Sick Call Requests on December 25, 2012, and December 30, 2012, stating that he "twisted [his] knee getting off the top bunk."  (Id., Exs. J-K.)

Plaintiff was then, subsequently, sent for an x-ray of his left knee on January 10, 2013, to be conducted by an outside medical provider, Bustleton Radiology Associates (Bustleton Radiology).  (Id., Exs. P-Q.)  Dr. Anthony Limberakis of that facility reported that "AP and lateral views of the left knee show no evidence of fracture, dislocation or intrinsic bone disease. Prominence of the suprapatellar soft tissues is noted suggesting suprapatellas bursitis[11] and/or synovitis."  (Id., Ex. Q.)  Dr Limberakis' impression was "[n]o fracture, dislocation or arthropathy detected."  (Id.)

The next medical document in the record regarding Plaintiff's knee problem is from February 20, 2013, when Plaintiff made a Sick Call Request stating that he "hurt myself getting out of bed."  (Id., Ex. M.)  Plaintiff was then seen by the prison medical staff on February 26, 2013.  (Pl.'s Resp. to Municipal Defs.' Mot. Summ. J., Ex. 27.)   On this date, Jean Pantal ("Pantal"), a nurse for Corizon, submitted a Utilization Management Referral Review Form requesting a "routine"[12] orthopedic office visit for Plaintiff's bursitis.  (Id., Ex. 27.)  Progress Notes[13] from this date indicate that Plaintiff had a "clicking noise" in his left knee.  (Id., Ex. 28.) However, the Notes also state that Plaintiff "denies any recent injury," and reports that Plaintiff was "ambulatory" with "no limp," and was "negative" for "swelling."  (Id.)  He also had "no edema," and was negative for "pain on palpation."  (Id.)  The next document of record is from

---

[11]Bursitis-" inflammation of a bursa, occasionally accompanied by a calcific deposit in the underlying supraspinatus tendon."  Dorland's Illustrated Medical Dictionary, 28th Edition, 1994, p. 240.

[12]This form contains boxes for a "routine" or "urgent" referral.  Pantal checked off "routine." (Pl.'s Resp., Ex. 27.)

[13]Because these Progress Notes are handwritten and often difficult to read, we make our best attempt to set forth what they state.

April 9, 2013, when Defendant Dr. Blatt referred Plaintiff for an MRI of the left knee.
(Municipal Defs.' Mot. Summ. J., Ex. S.)

As stated above, we are of the opinion that Plaintiff's left knee condition from the time he
reported an injury on December 22, 2012, up until April 9, 2013, did not constitute a serious
medical need.  As noted, the x-ray taken on January 10, 2013, revealed "no evidence of fracture,
dislocation, or intrinsic bone disease," but only evidence "suggesting" bursitis.  (Id. , Ex. Q.)
Plaintiff has presented no evidence that this condition seriously limited him in any way at this
time; nor, has he offered any case law supporting a determination that bursitis constitutes a
serious medical need.  Likewise, when Plaintiff was seen again for a left knee injury on February
26, 2013, Progress Notes reported that Plaintiff was "ambulatory" with "no limp," was
"negative" for "swelling," and was "negative for pain upon palpation."  (Pl.'s Resp. to Municipal
Defs.' Mot. Summ. J., Ex. 28.)  Thus, we find that the record does not support a serious medical
need during this time.  Accordingly, Plaintiff has failed to establish that he had a serious medical
need during this time period; therefore, we are not required to address the question of whether
Corizon was deliberately indifferent to his knee condition at that time.  See Estelle, 429 U.S. at
106.

However, we do find that Plaintiff's knee condition did constitute a serious medical need
as of April 9, 2013, when Plaintiff was referred for an MRI.  (Municipal Defs.' Mot. Summ. J.,
Ex. S.)  In addition, an Inmate Injury Report dated April 12, 2013, indicated that Plaintiff
reported that he "slipped and fell injuring his left knee."  (Pl.'s Resp. to Municipal Defs.' Mot.
Summ. J., Ex. 13.)  Plaintiff had an MRI of the left knee conducted on April 30, 2013, by
Bustleton Radiology.  (Municipal Defs.' Mot. Summ. J., Ex. T.)  The report stated the results as:

10

"[m]ild arthritic change.  Complex tear of the posterior horn and body segment of the medial

meniscus[14] and of the lateral meniscus.  Anterior cruciate ligament tear which may be chronic.

Small joint effusion."  (Id.)

### b. Deliberate Indifference

Having found that Plaintiff's knee condition constituted a serious medical need at this

time in April 2013, we move on to the issue of whether Corizon was deliberately indifferent to

this serious medical need.  "Mere disagreement as to the proper medical treatment" is

"insufficient" to amount to deliberate indifference.  Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir.

2004) (quoting Monmouth Cnty., 834 F.2d at 346.)  Moreover, prison medical authorities are

"afford[ed] considerable latitude . . . in the diagnosis and treatment of the medical problems of

inmate patients," and "negligence in the administration of medical treatment to prisoners is not

itself actionable under the Constitution."  Inmates of Allegheny Cnty. Jail v. Pierce, 612 F.2d

754, 762 (3d Cir. 1979).  Therefore, to defeat a motion for summary judgment, Plaintiff "must

present enough evidence to support the inference that the defendants are knowingly and

unreasonably disregarding an objectively intolerable risk of harm."  Heggenmiller v. Edna Mahan

Corr. Inst. for Women, 128 F. App'x 240, 246-47 (3d Cir. 2005) (quoting Beers–Capitol v.

Whetzel, 256 F.3d 120, 132 (3d Cir. 2001)).

Although courts "will generally not find deliberate indifference when some level of

medical care has been offered to the inmate," Christy v. Robinson, 216 F. Supp. 2d 398, 413-15

(D. N.J. 2002), the Third Circuit has explained that "deliberate indifference to serious medical

---

[14]Meniscus (medial)- "a crescent-shaped disk of fibrocartilage attached to the medial margin of
the superior articular surface of the tibia."  Dorland's, supra. at 1013.

needs" may include denial of "reasonable requests for medical treatment" by prison authorities when either "such denial exposes the inmate to undue suffering or the threat of tangible residual injury" or "knowledge of the need or medical care is accompanied by the . . . intentional refusal to provide that care." Id. (quoting Monmouth Cnty., 834 F.2d at 346). "Short of absolute denial, if necessary medical treatment is delayed for non-medical reasons, a case of deliberate indifference has been made out." Monmouth Cnty., 834 F.2d at 346. However, "misdiagnosis or preference for a certain type of treatment will not alone rise to the level of deliberate indifference." Christy, 216 F. Supp. 2d at 413 (citing United States ex rel. Walker v. Fayette Cnty., 599 F.2d 573, 575 (3d Cir. 1979)); see also Estelle, 429 U.S. at 106.

Here, we are of the opinion that the record before us establishes that Corizon was not deliberately indifferent to Plaintiff's knee condition. The record reflects that Plaintiff did receive medical attention and care for his knee condition. Initially, at this time in April 2013, Corizon provided care for Plaintiff by sending him for an outside MRI in response to his knee complaints. Furthermore, subsequent to the MRI, Plaintiff continued to receive adequate medical attention for his knee condition.

As noted, the record contains several medical forms from CFCF that have handwritten notations which are difficult to understand. However, it is clear that Plaintiff was seen by Defendant Dr. Blatt on May 3, 2013, for his knee problem. (Municipal Defs.' Mot. Summ. J., Ex. U.) This note indicates that Plaintiff had an MRI which showed a meniscus tear, and that Plaintiff was scheduled for an orthopedic examination on August 16, 2013, at the orthopedic department of Mercy Hospital in Philadelphia. (Id.) It is notable at this time that Plaintiff claims that he never saw an orthopedic specialist based on Pantel's Utilization Management Referral

12

Review Form.  (Pl.'s Resp., Statement of Facts at ¶ 71.)  In fact, Plaintiff asserts that "[w]hile

imprisoned at PPS from December 22, 2012 until January 10, 2014, more than 365 days, [he]

never saw an orthopedic specialist for his 'left knee complex mechanical injury.  Chronic ACL

tear.  Medial and lateral meniscus tear.'"  (Id. at ¶ 81.)  However, the record is clear that Plaintiff

was examined by an orthopedic specialist at Mercy Orthopedics on August 16, 2013.  (Municipal

Defs.' Mot. Summ. J., Ex. V.)  The report from this examination stated that Plaintiff had "no

swelling or effusion," and that "bracing may be an option."  (Id.)  The report also recommended

that Plaintiff be referred to a University hospital for further evaluation, and noted that Plaintiff's

injury "did not likely happen falling out of bed."[15]  (Id.)  Moreover, Plaintiff admitted at his

deposition that he did go to Mercy Hospital to see an orthopedist.  (Lee Dep. at 86.)  Plaintiff

testified that the orthopedist at the hospital told him that he would give the prison "tips" on how

to treat the condition, but that is all he did for him.[16]  (Id.)

Another prison form which is dated August 23, 2013, indicates that Plaintiff was again

seen by prison medical personnel for his knee condition.  (Id., Ex. W.)  It is unclear from the

handwritten notations on this form whether Plaintiff was being referred to Temple Orthopedics

or had already been seen by them.[17]  (Id., Ex. W.)  However, regardless of whether Plaintiff was

---

[15]In addition, on this same date, Dr. Stephen Wiener ordered a "neoprene sleeve" for Plaintiff's knee to be used for six months.  (Pl.'s Resp., Ex. 29.)

[16]It is notable that during this time, Plaintiff was being continually treated by the prison medical staff for asthma.  Plaintiff was seen by a nurse on May 3, 2013, for complaints of shortness of breath. (Def. Corizon's Mot. Summ. J., Ex. E at D-7A 043-044)  Plaintiff was also seen in the Chronic Care Clinic at the prison for shortness of breath on July 1, 2013, and August 28, 2013.  (Id. at D-7A 045, 046, 052.)  He was also prescribed medication for this condition on September 5, 2013.  (Pl.'s Resp., Ex. 30.)

[17]Under a section of this form entitled "Previous treatment and response," the name Temple Orthopedics was written.  (Municipal Defs.' Mot. Summ. J., Ex. W.)

seen at Temple or not, the record indicates that Plaintiff was receiving adequate medical attention

for his knee condition, which contravenes any claim of deliberate indifference.  Plaintiff did

acknowledge that he received a knee sleeve, but claims that it was not the proper size.  (Lee Dep.

at 82.)  Plaintiff was also seen by Nurse Practitioner K. Martin on November 18, 2013, for his

left knee problem and was provided with a knee support.  (Pl.'s Resp., Ex. 30.)

In light of the above, we are of the opinion that Corizon was not deliberately indifferent

to Plaintiff's knee condition.  We find that the allegations of Plaintiff are, at best, assertions of

negligence or malpractice which do not amount to deliberate indifference.  See Estelle, 429 U.S.

at 106.  As noted earlier, deliberate indifference requires "obduracy and wantonness."  Whitley,

475 U.S. at 319.  Here, Plaintiff has failed to present evidence meeting this standard.  Moreover,

Plaintiff has failed to provide any evidence that any alleged delay or deficiency in care led to an

adverse effect on his knee condition.  For all these reasons, Plaintiff's claim of deliberate

indifference is without basis in the record.[18]  Accordingly, we grant summary judgment in favor

of Corizon on this cause of action.

## 2.    Defendant Sarskaya

It is acknowledged by Plaintiff that Sarskaya had only one interaction with him which

occurred on January 9, 2013.  (Pl.'s Resp. at 14.)  The record indicates that Sarskaya ordered an

x-ray of Plaintiff's left knee on this date.  (Defs.'s Mot. Summ. J., Ex. E at D-7A 021.)  As

discussed above, we have already determined that, at that time, Plaintiff's knee injury did not

---

[18]Corizon argues that it is entitled to summary judgment because a private corporation performing a municipal function may not be held vicariously liable under Section 1983.  (Defs.' Mot. Summ. J. at 9-10 citing Taylor v. Plousis, 101 F. Supp. 2d 255, 263-265 (D.N.J. 2000)).  However, because we have determined that Corizon was not deliberately indifferent to Plaintiff's serious medical needs, we need not address this issue.

amount to a serious medical need.  Consequently, because Plaintiff has failed to establish that he had a serious medical need in January 2013, we are not required to address the question of whether Sarskaya was deliberately indifferent to his knee condition at that time.  See Estelle, 429 U.S. at 106.

Nonetheless, even if Plaintiff could establish that he had a serious medical need at that time, the record indicates that Sarskaya was clearly not deliberately indifferent to this need.  As noted, she saw Plaintiff one time on January 9, 2013, and gave him immediate medical attention by ordering a left knee x-ray.  (Defs.'s Mot. Summ. J., Ex. E at D-7A 021.)  Moreover, the x-ray was conducted the very next day by Bustleton Radiology and showed "no evidence of fracture, dislocation or intrinsic bone disease."  (Id., Ex. F at D-7B 017.)  In addition,  Sarskaya prepared a "Bottom Bunk Accommodation" for Plaintiff on January 9, 2013, to end on March 9, 2013.[19] (Id., Ex. E at D-7A 019.)  Thus, this claim is without merit.  Accordingly, we grant summary judgment in favor of Sarskaya as to this claim.

### B.    Retaliation

Plaintiff also alleges that the Corizon Defendants were "retaliating against him for filing inmate medical grievances and his lawsuit."  (Pl.'s Resp. at 9.)  Plaintiff asserts that Corizon employees told him that "he is not going to get 'sh-t' unless he withdraws his lawsuit, or they

---

[19]Plaintiff denies ever receiving a bottom bunk, and argues that Sarskaya failed to follow-up with PPS officials to ensure that he received a bottom bunk.  (Pl.'s Resp. at 15.)  However, as we determined in our prior decision, failure to provide prisoners with a ladder to reach the top bunk of a bunk bed is not sufficiently serious to rise to the level of a constitutional violation.  Lee, 2014 WL 6987414, at *4; see also Williams v. Corizon, No. 12-2412, 2013 WL 4787223, at *15 (E.D. Pa. Sept. 9, 2013); Nixon v. Moore, No. 13-0644, 2013 WL 692643, at *1 (E.D. Pa. Feb. 25, 2013); Diaz v. Arnold, No. 12–6754, 2013 WL 334796, at *1 (E.D. Pa. Jan. 28, 2013).  We also note that Plaintiff was again approved for "Bottom Bunk Accommodation" on April 13, 2013, to end on July 9, 2013, which was signed by Defendant Dr. Blatt.  (Municipal Defs.' Mot. Summ. J. , Ex. Y.)

'cannot do anything for him.'"  Sec. Am. Compl. ¶ 67.

      To establish a prima facie case of retaliation, Plaintiff must demonstrate "(1) constitutionally protected conduct, (2) an adverse action by prison officials sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the exercise of his constitutional rights and the adverse action taken against him." Thompson v. Pitkins, 514 F. App'x 88, 90 (3d Cir. 2013) (quoting Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003)); see also Moore v. City of Phila., 461 F.3d 331, 341-42 (3d Cir. 2006); Williams, 2013 WL 4787223, at *16.  The burden is on Plaintiff to show that "the constitutionally protected conduct was a substantial motivating factor in Defendants' conduct." Verbanik v. Harlow, 512 F. App'x 120, 122-23 (3d Cir. 2013) (citing Rauser v. Horn, 241 F.3d 330, 333 (3d Cir.2001)); Williams, 2013 WL 4787223, at *16.  "If a plaintiff can establish a prima facie case of retaliation the burden shifts to the defendant to demonstrate that even without the impetus to retaliate he would have taken the action complained of."  Id. (quoting Hartman v. Moore, 547 U.S. 250, 260 (2006)).

      "To satisfy the third element, a plaintiff must allege that the exercise of his constitutional rights was a substantial and motivating factor in the decision to take adverse action against him." Frazier v. Daniels, No. 09-3612, 2010 WL 2040763, at *10 (E.D. Pa. May 20, 2010); Booth v. Pence, 354 F. Supp. 2d 553, 560 (E.D. Pa. 2005) (quoting Rauser, 241 F.3d at 333-34).  "If a prisoner sufficiently establishes a causal connection, prison officials may 'overcome this element by demonstrating that the same action would have been taken in the absence of the protected activity.'" Rauser, 242 F.3d at 34.

      Here, the first prong of the § 1983 retaliation test is not in dispute because Plaintiff

engaged in constitutionally protected conduct by filing this lawsuit and submitting grievances at CFCF.  We are of the opinion, however, that Plaintiff has not met the second prong of his burden that the Corizon Defendants took adverse action to deter him from exercising his rights and/or that there is a casual link between the alleged conduct and Plaintiff's constitutional exercises.  As discussed above, we have determined that the Corizon Defendants were not deliberately indifferent to Plaintiff's serious medical needs.  Moreover, Plaintiff has produced no other evidence of acts on the part of the Corizon Defendants which indicate any retaliation against him.  Thus, the record establishes that the Corizon Defendants did not retaliate against Plaintiff for filing grievances and this lawsuit against them.   Accordingly, we dismiss this claim.

### C.    Monell Claim

Plaintiff asserts that Corizon, acting under color of state law, and pursuant to an "unconstitutional custom, policy and practice," violated his right to medical care for his serious medical needs.  Sec. Am. Compl. ¶ 98.  It is well-settled that Corizon cannot be held responsible for the acts of its employees under a theory of respondeat superior or vicarious liability.  See Monell v. New York City Dept. of Soc. Servs., 436 U.S. 658, 691 (1978).  However, Corizon can be liable to Plaintiff if he can provide evidence that there was a relevant Corizon policy or custom, and that the policy caused the constitutional violation he alleges.  See Bd. of County Comm'rs of Bryan Cnty, Oklahoma v. Brown, 520 U.S. 397, 404 (1997); Natale v. Camden Cnty. Correctional Facility, 318 F.3d 575, 583-84 (3d Cir. 2003).

Not all state action rises to the level of a custom or policy.  A policy is made "when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues a final proclamation, policy or edict."  Kneipp v. Tedder, 95 F.3d 1199, 1212 (3d Cir.

1996) (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986)).  A custom is an act "that has not been formally approved by an appropriate decisionmaker," but that is "so widespread as to have the force of law."  Bryan County, 520 U.S. at 404.

 In Natale v. Camden County Correctional Facility, the United States Court of Appeals for the Third Circuit identified three situations where acts of a government employee or other state actor may be deemed to be the result of a policy or custom of the entity for which the employee works, thereby rendering the entity liable under 42 U.S.C. § 1983.  318 F.3d at 584.  First, liability will extend to the entity when the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act is an implementation of that policy.  Id.  Second, liability extends when no rule has been announced as policy but federal law has been violated by an act of the policymaker itself.  Id.  Third, liability will extend when the policymaker has failed to act affirmatively at all, and the need to take some action to control the agents of the government was so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.  Id.

Here, we find that Plaintiff has failed to offer any specific evidence that Corizon has any custom or policy which was the proximate cause of the following alleged constitutional violations that were discussed above:[20] (1) violations of his constitutional rights relating to his medical care; and (2) violations of his First Amendment rights by retaliation for filing grievances and a lawsuit.  Moreover, while Plaintiff sued what appears to be policy-makers at Corizon

---

[20]Plaintiff merely cites to other cases in this District in which Corizon is named as a Defendant to support his claim.  However, he fails to offer evidence of a Corizon custom and/or policy in this action.

including  the CEO, the Chief Nursing Officer, two Vice Presidents, two Regional Medical

Directors, and a Health Service Administrator, the record is devoid of any deposition testimony

from any of these Defendants concerning policies at Corizon.  We, thus, grant summary

judgment to Corizon regarding this claim.

> ### D.      Corporate Negligence

Plaintiff next alleges that "[i]n negligently and recklessly examining and treating [him],

Corizon and its employees at PPS violated their duty of care to [him]."  Sec. Am. Compl. ¶ 20.

Corizon asserts that, under Pennsylvania law, a Certificate of Merit is required in cases involving

a corporate negligence claim, and because Plaintiff has not produced one, this claim must be

dismissed.  (Defs.' Mot. Summ. J. at 11.)  We agree.

Pennsylvania Rule of Civil Procedure 1042.3(a)(1) and (2) provide:

> In any action based upon an allegation that a licensed professional
> deviated from an acceptable professional standard, the attorney for the
> plaintiff, or the plaintiff if not represented, shall file with the complaint or
> within sixty days after the filing of the complaint, a certificate of merit signed
> by the attorney or party that either

> (1) an appropriate licensed professional has supplied a written statement
> that there exists a reasonable probability that the care, skill or knowledge
> exercised or exhibited in the treatment, practice or work that is the subject
> of the complaint, fell outside acceptable professional standards and that
> such conduct was a cause in bringing about the harm, or

> (2) the claim that the defendant deviated from an acceptable professional
> standard is based solely on allegations that other licensed professionals for
> whom this defendant is responsible deviated from an acceptable
> professional standard.

Pa. R. Civ. P. 1042.3(a)(1) and (2).

We first note that in <u>Booker v. United States</u>, the Third Circuit confirmed that Rule 1042.3(a)(1) is "substantive state law that must be applied by the federal district courts." <u>Booker</u>, 366 F. App'x 425, 426 (3d Cir. 2010).  Plaintiff argues that this rule requires a Certificate of Merit only where there is an allegation that a "licenced professional" deviated from "an acceptable professional standard."[21]  (Pl.'s Resp. at 19.)  Plaintiff asserts that there is no evidence in the record that the "Corizon corporate entity is a licensed professional."  (<u>Id.</u>)  We find this argument to be without merit.  The Pennsylvania procedural rules make it clear that a medical care providing entity, such as Corizon, is intended to be covered by Rules 1042.3(a)(1) and (2), which mandate that a Certificate of Merit be produced by a plaintiff bringing suit against such a defendant for negligence.

Pa. R. Civ. P. 1042.1(a)(1) and (2) states:

> (a) The rules of this chapter govern a civil action in which a professional liability claim is being asserted by or on behalf of a patient or client of the licensed professional against:

> (1) a licensed professional, and/or

> (2) a partnership, unincorporated association, corporation or similar entity where the entity is responsible for a licensed professional who deviated from an acceptable professional standard.[22]

---

[21]In support of this argument, Plaintiff cites <u>Ditch v. Wayesboro Hospital</u>, 17 A.3d 310, 314 (Pa. 2011).  However, Plaintiff fails to mention that the law that he cites is from the dissenting opinion in this case.  <u>Id.</u>

[22]Moreover, 40 P.S. § 1303.503, defines "health care provider" as:

> A primary health care center . . . or a person, including a corporation, university or other educational institution licensed or approved by the Commonwealth to

20

Pa. R. Civ. P. 1042.1(a)(1) and (2).  We are of the opinion that Corizon, as the corporate health care provider responsible for the physicians and other medical personnel it employs at the PPS, clearly fits within this definition.  Thus, Plaintiff was required to file a Certificate of Merit.

We also note that the Pennsylvania Supreme Court has held that Rule 1042.3 is subject to two "equitable exceptions:" first, the plaintiff's substantial compliance with the Rule, and second, the plaintiff's "reasonable explanation" or "legitimate excuse" for failure to fully comply.  Womer v. Hilliker, 908 A.2d 269, 279 (Pa. 2006).  Here, Plaintiff does not argue that he "substantially complied" with the Rule; nor, has he offered any explanation for failure to comply.  Plaintiff only argues that the Certificate of Merit is not required here.  For these reasons, we dismiss this claim.[23]

### E.    Intentional Infliction of Emotional Distress Claim Against the Corizon Defendants

Finally, Plaintiff alleges a claim of intentional infliction of emotional distress against the Corizon Defendants.  To prove a claim of intentional infliction of emotional distress, the following elements must be established: (1) the conduct must be extreme and outrageous; (2) it must be intentional or reckless; (3) it must cause emotional distress; and (4) that distress must be severe.  Hoy v. Angelone, 691 A.2d 476, 482 (Pa. Super. 1997).  Moreover, the conduct:

> provide health care or professional medical services as a physician . . . hospital, . . . and an officer, employee or agent of any of them acting in the course and scope of employment.

40 P.S. § 1303.503.

[23]It is notable that Plaintiff himself practically acknowledges that he does not have a negligence cause of action against Corizon.  He states "[t]o be sure, this is clearly an Eighth Amendment deliberate indifference case," and [his] "claims against Corizon's employees at PPS are for deliberate indifference, not medical malpractice."  (Pl.'s Resp. at 19.)

> must be so outrageous in character, and so extreme in degree, as to go
> beyond all possible bounds of decency, and to be regarded as atrocious,
> and utterly intolerable in any civilized society . . . [I]t has not been enough
> that the defendant has acted with intent which is tortious or even criminal,
> or that he has intended to inflict emotional distress, or even that his
> conduct has been characterized by "malice," or a degree of aggravation
> that would entitle the plaintiff to punitive damages for another tort.

Reardon v. Allegheny College, 926 A.2d 477, 488 (Pa. Super. 2007) (quoting Hoy, 720 A.2d at 754).  In addition, under Pennsylvania law, for Plaintiff to recover on this claim, he must prove the existence of the alleged emotional distress by "expert medical confirmation that the plaintiff actually suffered the claimed distress."  Kazatsky v. King David Memorial Park, Inc., 527 A.2d 988, 996 (Pa. 1987).

Here, the record is devoid of any medical evidence supporting a claim of emotional distress.  Therefore, under Pennsylvania law, Plaintiff cannot recover on this claim.  In addition, Plaintiff has failed to produce evidence that any action(s) on the part of the Corizon Defendants was "extreme and outrageous."  See Hoy, 691 A.2d at 482.  We, thus, grant summary judgment on this claim.

## IV.    CONCLUSION

In accordance with the above, we grant summary judgment in favor of Corizon and Sarskaya on all causes of action.  We, therefore, grant Summary Judgment in its entirety, and all claims against these Defendants are dismissed.

An appropriate Order follows.