IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL MOHAMMED LEE, Plaintiff, | : | CIVIL ACTION |
| v. | : | No. 13-0486 |
| MAJOR ABELLOS, et al., Defendants. | : | |

**MEMORANDUM**

**ROBERT F. KELLY, Sr. J.** **JANUARY 12, 2015**

Presently before the Court is Defendants, Dr. Eke Kalu ("Dr. Kalu") and Dr. Bruce Blatt's ("Dr. Blatt") (collectively, the "Defendants"), Motion for Summary Judgment against Plaintiff, Michael Mohammed Lee ("Plaintiff"), and Plaintiff's Response in opposition. For the reasons which follow, Defendants' Motion is granted.

## I. BACKGROUND[1]

### A. The Parties

Plaintiff is an adult male resident of the Commonwealth of Pennsylvania. Sec. Am. Compl. ¶ 7. At all times relevant to this litigation, Plaintiff was imprisoned at the Curran-Fromhold Correctional Facility ("CFCF") in Philadelphia, Pennsylvania. Id. Dr. Kalu is a Regional Director at Corizon Health, Inc. ("Corizon"). Id. ¶ 25. Corizon is a Delaware corporation and, at all relevant times, held a contract to provide all medical services to inmates in

[1]For a complete factual and procedural background of this action, see this Court's previous Memorandum Opinion. See Lee v. Abellos, No. 13-0486, 2014 WL 6987414, at *1-3 (E.D. Pa. Dec. 10, 2014).

the Philadelphia Prison System ("PPS"), and was under the direct control and supervision of the City of Philadelphia (the "City").[2] Id. ¶ 20. Dr. Blatt is a medical doctor employed by Corizon.[3] Id. ¶ 289.

**B. Plaintiff's Claims[4]**

Plaintiff asserts the following allegations which occurred during his two periods of incarceration at CFCF.[5] On September 8, 2012, while incarcerated at CFCF, he was attacked by several correctional officers after returning from a counseling session with a health professional. Id. ¶ 38. This attack caused Plaintiff injuries to various parts of his body. Id. On December 22, 2012, Plaintiff injured his knee getting off the top bunk at CFCF. Id. ¶ 44. On this same date, he made a "Sick Call Request" stating that his knee was swollen and he was in pain. Id. ¶ 45. He also made Sick Call Requests on December 23, 25 and 30, 2012, and was not given any medical treatment from December 22, 2012, through January 9, 2013. Id. ¶¶ 46-50. During that time,

---

[2]Plaintiff also named as Defendants the following: (1) the City; (2) PPS Commissioner Louis Giorla ("Giorla"), (3) PPS Deputy Commissioner Clyde Gainey ("Gainey"), (4) CFCF Warden John Delaney ("Delaney"), (5) CFCF Deputy Warden Frederick Abellos ("Abellos"), (6) CFCF Deputy Warden Gerald May ("May"), (7) CFCF Correctional Lieutenant Elizabeth Henry ("Henry"), (8) CFCF Correctional Sergeant Brown ("Brown"), (9) Chief Medical Officer of the PPS, Dr. Bruce Herdman ("Dr. Herdman"), (10) "Whittaker," a PPS major at CFCF; (11) "Moore," a PPS Major at CFCF; (12) Freddie Washington, a CFCF correctional officer (collectively, the Municipal Defendants); (13) Corizon; (14) Richard Hallworth, the CEO of Corizon; (15) Rebecca Pinney, Chief Nursing Officer at Corizon; (16) Geoff Perselay, a Senior Vice President at Corizon; (17) Mary Silva, a Vice President at Corizon; (18) Latasha Deer, a Health Service Administrator at Corizon; (19) Brandon DeJulius, a Regional Medical Director at Corizon; and (20) Helen Sarskaya ("Sarskaya"), a physician's assistant, employed by Corizon (collectively, the "Corizon Defendants"). Sec. Am. Compl. ¶¶ 15-28.

[3]Defendants, Mary Silva, Latasha Deer, Brandon DeJulius, Melvin Whittaker, Marcella Moore Freddie Washington, Richard Hallworth, and Rebecca Pinney were dismissed from this action by stipulation of the parties. (See Doc. Nos. 40, 52, 54.)

[4]We state only those factual allegations and claims relevant to Drs. Kalu and Blatt.

[5]Plaintiff was incarcerated at CFCF from September 8, 2012, to September 18, 2012, and from November 22, 2012, to January 10, 2014.

Plaintiff was compelled to continue sleeping on the top bunk because Corizon's medical staff would not give him a bottom bunk accommodation. Id. ¶ 51.

On January 9, 2013, Plaintiff again injured his knee getting off the top bunk. Id. ¶ 52. On January 10, 2013, Plaintiff had an x-ray taken of his left knee which revealed a knee injury. Id. ¶ 53. Plaintiff was seen by Dr. Blatt who did not provide any medical treatment for his alleged serious orthopedic injury. Id. ¶ 55. Between January 10, 2013 and February 20, 2013, Plaintiff injured his left knee several more times getting off the top bunk, and the Corizon Defendants did not allow him a bottom bunk accommodation. Id. ¶¶ 60-61. On February 20, 2013, Plaintiff made a Sick Call Request stating that he hurt his knee again getting off the top bunk and was in "bad pain." Id. ¶ 62. On April 30, 2013, an MRI of Plaintiff's left knee was conducted and showed a tear in his meniscus. Id. ¶ 63. The Corizon Defendants intentionally delayed his request to have an orthopedic consultation because of this instant lawsuit against them. Id. ¶ 67. In addition, Sarskaya failed to provide any medical treatment for his injury. Id. ¶ 68.

In the Second Amended Complaint, Plaintiff alleges the following against Dr. Kalu and Dr. Blatt:

> (1) "Violations of constitutional amendments, civil rights and other federal laws" against the Corizon Defendants (Count 2). Plaintiff asserts that Dr. Blatt acted with deliberate indifference to his serious medical needs by "recklessly and deliberately indifferently failing to promptly and adequately treat" his serious medical needs; and
>
> (2) State law claim of intentional infliction of emotional distress against all Defendants (Count 7).

Sec. Am. Compl. ¶¶ 97-98, 106, 118-119.

### C. Procedural History

On January 30, 2013, Plaintiff filed a pro se civil rights action against Defendants Abellos, Delaney, and May. (See Doc. No. 3.) After obtaining the representation of Geoffrey Seay, Esquire, Plaintiff filed a Motion for Leave to File an Amended Complaint, which this Court granted on June 12, 2013. (See Doc. Nos. 13, 16.) The subsequent Amended Complaint added eighteen Defendants, as named above, and spanned forty-nine pages with approximately two hundred and sixty-seven paragraphs. See Am. Compl. Both the Municipal and Corizon Defendants filed Motions to Dismiss and argued that the Amended Complaint failed to comport with the requirements of Federal Rule of Procedure 8.[6] (See Doc. Nos. 19, 21.) We agreed and granted the Motions, but granted Plaintiff leave to file another Amended Complaint. (See Doc. No. 29.) Plaintiff filed a Second Amended Complaint on September 5, 2013. (See Doc. No. 31.) Defendants filed the instant Motion for Summary Judgment on August 27, 2014.[7] (Doc. No. 53.) Plaintiff filed a Response on September 24, 2014. (Doc. No. 72.)

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) states that summary judgment is proper "if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." See Hines v. Consol. Rail Corp., 926 F.2d 262, 267 (3d Cir. 1991). The Court asks

---

[6]The Federal Rules require that a complaint set forth a "short and plain statement of the claim" whereby "each allegation must be simple, concise and direct." Fed. R. Civ. P. 8(a)(2) and (d)(1).

[7]The Municipal Defendants filed a Motion for Summary Judgment on August 28, 2014. (Doc. No. 55.) This Motion was granted in its entirety on December 10, 2014. See Lee, 2014 WL 6987414, at *1-22. Consequently, the following Defendants were dismissed from this action: the City, Giorla, Gainey, Delaney, Abellos, May, Henry, Brown, and Dr. Herdman. (See Id.) In addition, Corizon and Sarskaya filed a Motion for Summary Judgment on August 30, 2014. (Doc. No. 57.) That Motion was granted in its entirety, and those Defendants were also dismissed. See Lee v. Abellos, No. 13-0486, 2014 WL 7271363, at *1-10 (E.D. Pa. Dec. 19, 2014).

"whether the evidence presents a sufficient disagreement to require submission to the jury or whether . . . one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). The moving party has the initial burden of informing the court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "A fact is material if it could affect the outcome of the suit after applying the substantive law. Further, a dispute over a material fact must be 'genuine,' i.e., the evidence must be such 'that a reasonable jury could return a verdict in favor of the non-moving party.'" Compton v. Nat'l League of Prof'l Baseball Clubs, 995 F. Supp. 554, 561 n.14 (E.D. Pa. 1998).

Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Once the moving party has produced evidence in support of summary judgment, the non-moving party must go beyond the allegations set forth in its pleadings and counter with evidence that presents "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see Big Apple BMW, Inc. v. BMW of N. Am. Inc., 974 F.2d 1358, 1362-63 (3d Cir. 1992). "More than a mere scintilla of evidence in its favor" must be presented by the non-moving party in order to overcome a summary judgment motion. Tziatzios v. United States, 164 F.R.D. 410, 411-12 (E.D. Pa. 1996). If the court determines that there are no genuine issues of material fact, then summary judgment will be granted. Celotex, 477 U.S. at 322.

## III. DISCUSSION

### A. Eighth Amendment Claim

Plaintiff claims that the Defendants were "deliberately indifferent" to his serious medical needs in violation of his Eighth Amendment rights. Sec. Am. Compl. ¶ 98. The Eighth Amendment's proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. Estelle v. Gamble, 429 U.S. 97 (1976). The Estelle Court determined that, in order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. Id. at 106. Therefore, to succeed under these principles, Plaintiff must demonstrate: (1) that the Defendants were deliberately indifferent to his medical needs, and (2) that those needs were serious. Id.

It is well-settled that claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute "deliberate indifference." Id. As the Estelle Court noted: "[i]n the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.'" Id. at 105; see also Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999); Durmer v. O'Carroll, 991 F.2d 64, 67 (3d Cir. 1993). "Deliberate indifference," therefore, requires "obduracy and wantonness," Whitley v. Albers, 475 U.S. 312, 319 (1986), which has been likened to conduct that includes recklessness or a conscious disregard of a serious risk. Farmer v. Brennan, 511 U.S. 825, 842 (1994).

The Court of Appeals for the Third Circuit ("Third Circuit") has found "deliberate indifference" in a variety of circumstances, including where a prison official: (1) knows of a

prisoner's need for medical treatment, but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment. Durmer, 991 F.2d at 68.

We note, at this time, that in two prior Memorandum Opinions in this case, we addressed the issue of deliberate indifference to Plaintiff's serious medical needs against the Municipal and Corizon Defendants. See Lee, 2014 WL 6987414, at *4-8; Lee, 2014 WL 7271363, at *4-7. Those discussions are applicable to Plaintiff's allegations against Dr. Blatt and Dr. Kalu here because we considered the care given to Plaintiff by Corizon employees, including Dr. Blatt, for his alleged serious medical problems, and, in particular, his left knee problems. (Id.) Consequently, we incorporate much of the discussions from these Memorandum Opinions below with regard to the issue of deliberate indifference.

**1. Dr. Blatt**

**a. Serious Medical Need**

Plaintiff asserts that Dr. Blatt "acted in deliberate indifference to [his] serious medical needs by recklessly and deliberately indifferently failing to promptly and adequately treat [his] serious medical conditions." Sec. Am. Compl. ¶ 98. Like our prior decisions, we initially address the issue of whether Plaintiff's left knee injury constituted a serious medical need. A "serious medical need" is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Johnson v. Stempler, 373 F. App'x 151, 153 n.1 (3d Cir. 2010) (citing Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987)). We first find that Plaintiff's left knee condition did not constitute a serious medical need during the period from

December 22, 2012, when he first reported that he hurt his knee, until early April 2013, when he was referred for an MRI.

The record indicates that Plaintiff submitted a Sick Call Request to CFCF officials on December 22, 2012, stating that he hurt his knee getting out of the top bunk, and that his knee was swollen and that he was in pain. (Municipal Defs.' Mot. Summ. J., Ex. H.) He submitted another Sick Call Request on December 23, 2012, stating that he had injured his knee. (Id., Ex. I.) Plaintiff was scheduled to see medical personnel at CFCF on December 26, 2012.[8] (Id.) However, the appointment was cancelled and rescheduled because Plaintiff had a court appearance on that day.[9] (Id., Ex. O). Plaintiff was seen by prison health care personnel on January 9, 2013.[10] (Id., Ex. P.)

Plaintiff was then, subsequently, sent for an x-ray of his left knee on January 10, 2013, to be conducted by an outside medical provider, Bustleton Radiology Associates (Bustleton

[8]Plaintiff acknowledged that he was seen at the prison asthma clinic on December 24, 2012, and was given medication for his throat "closing up." (Municipal Defs.' Mot. Summ. J., Ex. B, Lee Dep. ("Lee Dep.") at 74-75.) There is no indication in the record that Plaintiff reported a knee injury at this time. (Id.)

[9]Plaintiff also submitted Sick Call Requests on December 25, 2012, and December 30, 2012, stating that he "twisted [his] knee getting off the top bunk." (Id., Exs. J-K.)

[10]Dr. Blatt testified at his deposition that he started working at CFCF on or about January 2, 2013, as the "Chronic Care Physician." (Pl.'s Resp., Ex. 40, Dr. Blatt Dep. ("Dr. Blatt Dep.") at 8-9.) He stated that his responsibilities in this position were "to see patients scheduled for what we call the Chronic Care Clinic with certain diagnoses; such as, diabetes, hypertension, seizures, asthma. They would be placed in the clinic and be automatically seen every three months or sooner if necessary." (Id. at 9.) He added that inmates with orthopedic injuries could also be seen at this clinic. (Id. at 10.) Dr. Blatt stated that he saw Plaintiff on January 10, 2013, in the Chronic Care Clinic for asthma, and prescribed him medication for that condition. (Id. at 31-32, 38-39.) Plaintiff was also issued a "pass" to be able to receive medication for his asthma when necessary. (Id. at 40.) Dr. Blatt did not recall Plaintiff mentioning a knee problem to him at this time. (Id. at 41.) On January 16, 2013, he prescribed medication to Plaintiff for psychological issues. (Id. at 42.) Dr. Blatt did not see Plaintiff again until April 9, 2013. (Id. at 45-46.)

Radiology). (Id., Exs. P-Q.) Dr. Anthony Limberakis of that facility reported that "AP and lateral views of the left knee show no evidence of fracture, dislocation or intrinsic bone disease. Prominence of the suprapatellar soft tissues is noted suggesting suprapatellas bursitis[11] and/or synovitis." (Id., Ex. Q.) Dr Limberakis' impression was "[n]o fracture, dislocation or arthropathy detected." (Id.)

The next medical document in the record regarding Plaintiff's knee problem is from February 20, 2013, when Plaintiff made a Sick Call Request stating that he "hurt myself getting out of bed." (Id., Ex. M.) Plaintiff was then seen by the prison medical staff on February 26, 2013. (Pl.'s Resp. to Municipal Defs.' Mot. Summ. J., Ex. 27.) On this date, Jean Pantal ("Pantal"), a nurse for Corizon, submitted a Utilization Management Referral Review Form requesting a "routine"[12] orthopedic office visit for Plaintiff's bursitis. (Id., Ex. 27.) Progress Notes[13] from this date indicate that Plaintiff had a "clicking noise" in his left knee. (Id., Ex. 28.) However, the Notes also state that Plaintiff "denies any recent injury," and reports that Plaintiff was "ambulatory" with "no limp," and was "negative" for "swelling." (Id.) He also had "no edema," and was negative for "pain on palpation." (Id.) The next document of record is from April 9, 2013, when Dr. Blatt referred Plaintiff for an MRI of the left knee. (Municipal Defs.' Mot. Summ. J., Ex. S.)

---

[11] Bursitis-" inflammation of a bursa, occasionally accompanied by a calcific deposit in the underlying supraspinatus tendon." Dorland's Illustrated Medical Dictionary, 28th Edition, 1994, p. 240.

[12] This form contains boxes for a "routine" or "urgent" referral. Pantal checked off "routine." (Pl.'s Resp., Ex. 27.)

[13] Because these Progress Notes are handwritten and often difficult to read, we make our best attempt to set forth what they state.

As stated above, we are of the opinion that Plaintiff's left knee condition from the time he reported an injury on December 22, 2012, up until April 9, 2013, did not constitute a serious medical need. As noted, the x-ray taken on January 10, 2013, revealed "no evidence of fracture, dislocation, or intrinsic bone disease," but only evidence "suggesting" bursitis. (Id. , Ex. Q.) Plaintiff has presented no evidence that this condition seriously limited him in any way at this time; nor, has he offered any case law supporting a determination that bursitis constitutes a serious medical need. Likewise, when Plaintiff was seen again for a left knee injury on February 26, 2013, Progress Notes reported that Plaintiff was "ambulatory" with "no limp," was "negative" for "swelling," and was "negative for pain upon palpation." (Pl.'s Resp. to Municipal Defs.' Mot. Summ. J., Ex. 28.) Thus, we find that the record does not support a serious medical need during this time. Accordingly, Plaintiff has failed to establish that he had a serious medical need during this time period; therefore, we are not required to address the question of whether Dr. Blatt was deliberately indifferent to his knee condition at that time. See Estelle, 429 U.S. at 106.

However, we do find that Plaintiff's knee condition did constitute a serious medical need as of April 9, 2013, when Plaintiff was referred for an MRI. (Municipal Defs.' Mot. Summ. J., Ex. S.) In addition, an Inmate Injury Report dated April 12, 2013, indicated that Plaintiff reported that he "slipped and fell injuring his left knee." (Pl.'s Resp. to Municipal Defs.' Mot. Summ. J., Ex. 13.) Plaintiff had an MRI of the left knee conducted on April 30, 2013, by Bustleton Radiology. (Municipal Defs.' Mot. Summ. J., Ex. T.) The report stated the results as: "[m]ild arthritic change. Complex tear of the posterior horn and body segment of the medial

meniscus[14] and of the lateral meniscus. Anterior cruciate ligament tear which may be chronic. Small joint effusion." (Id.)

**b. Deliberate Indifference**

Having found that Plaintiff's knee condition in April 2013, constituted a serious medical need, we move on to the issue of whether Dr. Blatt was deliberately indifferent to this serious medical need. "Mere disagreement as to the proper medical treatment" is "insufficient" to amount to deliberate indifference. Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004) (quoting Monmouth Cnty., 834 F.2d at 346.) Moreover, prison medical authorities are "afford[ed] considerable latitude . . . in the diagnosis and treatment of the medical problems of inmate patients," and "negligence in the administration of medical treatment to prisoners is not itself actionable under the Constitution." Inmates of Allegheny Cnty. Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979). Therefore, to defeat a motion for summary judgment, Plaintiff "must present enough evidence to support the inference that the defendants are knowingly and unreasonably disregarding an objectively intolerable risk of harm." Heggenmiller v. Edna Mahan Corr. Inst. for Women, 128 F. App'x 240, 246-47 (3d Cir. 2005) (quoting Beers–Capitol v. Whetzel, 256 F.3d 120, 132 (3d Cir. 2001)).

Although courts "will generally not find deliberate indifference when some level of medical care has been offered to the inmate," Christy v. Robinson, 216 F. Supp. 2d 398, 413-15 (D. N.J. 2002), the Third Circuit has explained that "deliberate indifference to serious medical needs" may include denial of "reasonable requests for medical treatment" by prison authorities

---

[14] Meniscus (medial)- "a crescent-shaped disk of fibrocartilage attached to the medial margin of the superior articular surface of the tibia." Dorland's, supra. at 1013.

when either "such denial exposes the inmate to undue suffering or the threat of tangible residual injury" or "knowledge of the need or medical care is accompanied by the . . . intentional refusal to provide that care." Id. (quoting Monmouth Cnty., 834 F.2d at 346). "Short of absolute denial, if necessary medical treatment is delayed for non-medical reasons, a case of deliberate indifference has been made out." Monmouth Cnty., 834 F.2d at 346. However, "misdiagnosis or preference for a certain type of treatment will not alone rise to the level of deliberate indifference." Christy, 216 F. Supp. 2d at 413 (citing United States ex rel. Walker v. Fayette Cnty., 599 F.2d 573, 575 (3d Cir. 1979)); see also Estelle, 429 U.S. at 106.

Here, we are of the opinion that the record before us establishes that Dr. Blatt was not deliberately indifferent to Plaintiff's knee condition. The record reflects that Plaintiff did receive medical care for this condition, including medical attention from Dr. Blatt. On April 9, 2013, Dr. Blatt saw Plaintiff for his knee complaints and referred him for an outside MRI.[15] (Municipal Defs.' Mot. Summ. J., Ex. S.) This MRI was performed by Bustleton Radiology on April 30, 2013. (Id., Ex. T.) Subsequent to the MRI, Plaintiff continued to receive adequate medical attention for this ailment by Dr. Blatt and other Corizon health care providers.

As noted, the record contains several medical forms from CFCF that have handwritten notations which are difficult to understand. However, it is clear that Plaintiff was again seen by Dr. Blatt on May 3, 2013, for his knee problem. (Id., Ex. U.) This note indicates that Plaintiff had an MRI which showed a meniscus tear, and that Dr. Blatt scheduled Plaintiff for an orthopedic examination on August 16, 2013, at the orthopedic department of Mercy Hospital in

[15]It is notable that Dr. Blatt testified that Plaintiff did not tell him how many times he had made requests to be seen for his knee problems, and that this was the first time on this date that Plaintiff complained to him about his knee. (Dr. Blatt Dep. at 46.)

Philadelphia.[16] (Id.) It is notable at this time that Plaintiff claims that he never saw an orthopedic specialist based on Pantel's Utilization Management Referral Review Form. (Pl.'s Resp., Statement of Facts at ¶ 71.) In fact, Plaintiff asserts that "[w]hile imprisoned at PPS from December 22, 2012 until January 10, 2014, more than 365 days, [he] never saw an orthopedic specialist for his 'left knee complex mechanical injury. Chronic ACL tear. Medial and lateral meniscus tear.'" (Id. at ¶ 81.) However, the record is clear that Plaintiff was examined by an orthopedic specialist at Mercy Orthopedics on August 16, 2013. (Municipal Defs.' Mot. Summ. J., Ex. V.) The report from this examination stated that Plaintiff had "no swelling or effusion," and that "bracing may be an option." (Id.) The report also recommended that Plaintiff be referred to a University hospital for further evaluation, and noted that Plaintiff's injury "did not likely happen falling out of bed."[17] (Id.) Moreover, Plaintiff admitted at his deposition that he did go to Mercy Hospital to see an orthopedist. (Lee Dep. at 86.) Plaintiff testified that the orthopedist at the hospital told him that he would give the prison "tips" on how to treat the

---

[16]Dr. Blatt testified that he also approved Plaintiff for bottom bunk status on April 9, 2013, as a result of seeing him for his knee complaints. (Dr. Blatt Dep. at 45-46.) Defendant Sarskaya also prepared a "Bottom Bunk Accommodation" for Plaintiff from January 9, 2013, until March 9, 2013. (Municipal Defs.' Mot. Summ. J., Ex. E at D-7A 019.) Plaintiff denies ever receiving a bottom bunk, and argues that Sarskaya failed to follow-up with PPS officials to ensure that he received a bottom bunk. (Pl.'s Resp. to Corizon's Mot. Summ. J. at 15.) However, as we determined in our prior decision, failure to provide prisoners with a ladder to reach the top bunk of a bunk bed is not sufficiently serious to rise to the level of a constitutional violation. Lee, 2014 WL 6987414, at *4; see also Williams v. Corizon, No. 12-2412, 2013 WL 4787223, at *15 (E.D. Pa. Sept. 9, 2013); Nixon v. Moore, No. 13-0644, 2013 WL 692643, at *1 (E.D. Pa. Feb. 25, 2013); Diaz v. Arnold, No. 12–6754, 2013 WL 334796, at *1 (E.D. Pa. Jan. 28, 2013).

[17]In addition, on this same date, Dr. Stephen Wiener ordered a "neoprene sleeve" for Plaintiff's knee to be used for six months. (Pl.'s Resp., Ex. 29.)

condition, but that is all he did for him.[18] (Id.)

Another prison form which is dated August 23, 2013, indicates that Plaintiff was again seen by prison medical personnel for his knee condition. (Id., Ex. W.) It is unclear from the handwritten notations on this form whether Plaintiff was being referred to Temple Orthopedics or had already been seen by them.[19] (Id., Ex. W.) However, regardless of whether Plaintiff was seen at Temple or not, the record indicates that Plaintiff was receiving adequate medical attention for his knee condition, which contravenes any claim of deliberate indifference. Plaintiff did acknowledge that he received a knee sleeve, but claims that it was not the proper size. (Lee Dep. at 82.) Plaintiff was also seen by Nurse Practitioner K. Martin on November 18, 2013, for his left knee problem and was provided with a knee support. (Pl.'s Resp., Ex. 30.)

In light of the above, we are of the opinion that Defendant Dr. Blatt was not deliberately indifferent to Plaintiff's knee condition. We find that the allegations of Plaintiff are, at best, assertions of negligence or malpractice which do not amount to deliberate indifference. See Estelle, 429 U.S. at 106. As noted earlier, deliberate indifference requires "obduracy and wantonness." Whitley, 475 U.S. at 319. Here, Plaintiff has failed to present evidence meeting this standard. Moreover, Plaintiff has failed to provide any evidence that any alleged delay or deficiency in care led to an adverse effect on his knee condition. For all these reasons, Plaintiff's

[18] It is notable that during this time, Plaintiff was being continually treated by the prison medical staff for asthma. Plaintiff was seen by a nurse on May 3, 2013, for complaints of shortness of breath. (Def. Corizon's Mot. Summ. J., Ex. E at D-7A 043-044) Plaintiff was also seen in the Chronic Care Clinic at the prison for shortness of breath on July 1, 2013, and August 28, 2013. (Id. at D-7A 045, 046, 052.) He was also prescribed medication for this condition on September 5, 2013. (Pl.'s Resp., Ex. 30.)

[19] Under a section of this form entitled "Previous treatment and response," the name Temple Orthopedics was written. (Municipal Defs.' Mot. Summ. J., Ex. W.)

claim of deliberate indifference is without basis in the record. Accordingly, we grant summary judgment in favor of Dr. Blatt on this cause of action.

**2. Dr. Kalu**

Plaintiff contends that Dr. Kalu, as medical director of Corizon, is responsible for ensuring that inmates are promptly referred to outside orthopedic specialists, and that "in accordance with his custom, did not follow-up to ensure that [he] actually saw an orthopedic specialist for his serious medical need." (Pl.'s Resp. at 16.) We, however, find that the record does not support this claim.

As already discussed above and in our prior decisions, we are of the opinion that Plaintiff received adequate medical care and attention for his knee complaints. This care was given, not only from Dr. Blatt, but from the other health provider Defendants as well. Accordingly, Dr. Kalu, as the Medical Director of Corizon, was not deliberately indifferent to Plaintiff's knee problems. Moreover, contrary to Plaintiff's argument, Plaintiff did see an orthopedic specialist at Mercy Hospital on August 16, 2013, which was approved by Dr. Kalu.[20] (See Municipal Defs.' Mot. Summ. J., Ex. V.) Accordingly, we find this claim to be without merit, and we grant summary judgment in favor of Dr. Kalu.[21]

---

[20]It is notable that Plaintiff submits a deposition of Dr. Kalu as an exhibit. However, such deposition is dated April 9, 2013, and does not address Plaintiff and this instant action. (Pl.'s Resp., Ex. 4.) Rather, it relates to other inmates involved in other lawsuits. (Id.)

[21]In addition, Dr. Kalu cannot be liable under a theory of respondeat superior. "It is well settled that the doctrine of respondeat superior may not be employed to impose § 1983 liability on a supervisor for the conduct of a subordinate which violates a citizen's constitutional rights." Blanche Road Corp. v. Bensalem Twp., 57 F.3d 253, 263 (3d Cir. 1995); Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Instead, for a supervisor to face liability, that supervisor must be personally involved in the alleged wrongs. Id. Here, we have found that Plaintiff's constitutional rights were not violated, and that Plaintiff has failed to submit evidence that Dr. Kalu had any personal involvement with him regarding his medical care.

**B. Intentional Infliction of Emotional Distress Claim**

Finally, Plaintiff alleges a claim of intentional infliction of emotional distress against the Defendants. To prove a claim of intentional infliction of emotional distress, the following elements must be established: (1) the conduct must be extreme and outrageous; (2) it must be intentional or reckless; (3) it must cause emotional distress; and (4) that distress must be severe. Hoy v. Angelone, 691 A.2d 476, 482 (Pa. Super. 1997). Moreover, the conduct:

> must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in any civilized society . . . [I]t has not been enough that the defendant has acted with intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort.

Reardon v. Allegheny College, 926 A.2d 477, 488 (Pa. Super. 2007) (quoting Hoy, 720 A.2d at 754). In addition, under Pennsylvania law, for Plaintiff to recover on this claim, he must prove the existence of the alleged emotional distress by "expert medical confirmation that the plaintiff actually suffered the claimed distress." Kazatsky v. King David Memorial Park, Inc., 527 A.2d 988, 996 (Pa. 1987).

Here, the record is devoid of any medical evidence supporting a claim of emotional distress. Therefore, under Pennsylvania law, Plaintiff cannot recover on this claim. In addition, Plaintiff has failed to produce evidence that any action(s) on the part of the Defendants was "extreme and outrageous." See Hoy, 691 A.2d at 482. We, thus, grant summary judgment on this claim.

## IV. CONCLUSION

In accordance with the above, we grant summary judgment in favor of Dr. Blatt and Dr.

Kalu on all causes of action. We, therefore, grant Summary Judgment in its entirety, and all claims against these Defendants are dismissed.

An appropriate Order follows.